Mr. Lee, you have two minutes for rebuttal. You can begin whenever you're ready. Good morning. May it please the court, Daniel Habib, Federal Defenders of New York, on behalf of Jeremiah Perez. Michael Gabriel's death was a tragedy, but it was also an accident. As the district court found, Mr. Perez did not know or consciously avoid learning that the pills he sold contained fentanyl. Mr. Perez believed them to be Percocets, which the government described below as, quote, legitimate prescription pills that are generally safe for consumption. In fact, as the government also agreed below, Mr. Perez was using the same pills himself, and it was pure happenstance that it was Mr. Gabriel who overdosed and not Mr. Perez. The 96-month sentence, more than six years and 350 percent greater than the top of the 15 to 21-month guideline range, is substantively unreasonable. The single factor that differentiates this offense from a heartland, low-level drug crime was Mr. Gabriel's unintended death. I just ask you, Mr. Habib, even if, well, first of all, the government notes that there was texts back and forth about how the pills were fire and that they had this potency and that your client knew about that, so that's one thing. But even putting that aside, if someone's distributing drugs illegally and someone dies, a college student dies as a result of that, even if it was unintended, can a district court say because of the extreme harm and devastation to the family who made statements at the sentencing about that devastation, warrants a higher punishment, even if it was unintended? Isn't that something a district court can do? A district court can absolutely consider the harm caused by an offensive conviction in imposing sentences, of course. Right, even if he didn't know there was fentanyl in there. You're illegally distributing drugs, and when you do that, bad things happen, including people dying, right? And so what I would say to that, Your Honor, is yes, of course a judge, a district judge, can take into account harm. However, it's also the case, and I want to draw this Court's attention in particular to Judge Walker's separate opinion in United States v. Stewart, a substantive reasonableness case, that the magnitude of the variance imposed as a result of the causation of harm must track culpability, and culpability in turn depends on mental state. There are a bunch of things that Judge Cotto pointed to to justify the sentence besides the death, including that he continued to sell, after the death, continued to sell the Percocet pills. His history was he had violent, he had an attempted assault conviction in 2016 against one year. He has an aggravated criminal contempt conviction in 2018 where he struck his ex-girlfriend bitter and struck the grandmother who had a concussion and had to go to the hospital, and eight months after getting released, I mean he gets eight months on that, and then within a year of getting released on that, he's selling Percocet pills, which results in a death. So all of those things together, can someone who has those types of factors in his case get eight years in jail, or is that shockingly high for someone with those combination of factors? Yes, your honor. At the threshold, the principal basis for this variance, and the only factor that differentiated this case from a heartland low-level drug offense was Mr. Gabriel's death. As to the sales subsequent to Mr. Gabriel's death, it's clear that Mr. Perez was unaware of Mr. Gabriel's death at the time he made those sales, and when he was apprised of Mr. Gabriel's during the last of the controlled sales in August 2019, he sold exactly zero pills from that time until the commencement of this federal case. His criminal history was reflected in his guidelines calculation, and to be candid, it was an unremarkable criminal history for someone convicted of a drug offense. It was reflected in his... Unremarkable? Two prior felonies involving violence, including the punching an ex-girlfriend, biting her, and knocking down a grandmother, and having to be hospitalized. That's unremarkable. Your honor, he had a youthful offender adjudication for an attempted robbery, and he had an aggravated criminal contempt, which resulted in an aggregate one-year concurrent sentence. I don't get to look at the underlying conduct. Those are pretty short sentences, but look at the underlying conduct. There's a lot of violence there, right? And the district court was entitled to consider that, and it did consider that, but it's also the case that the sentencing guidelines provide a metric for assessing the severity of criminal history, and that metric here resulted in a criminal history category of three, and in combination with the small quantity of fentanyl distributed in this case, a guideline range of 15 to 21 months. This court has regularly reversed, as substantively unreasonable, sentences that share many of the characteristics of the sentence imposed here, including a significant variance from the guideline range. Here, the variance, as I've noted, was more than six years and 350 percent of the top of the range, in line with substantive reasonableness reversals in, for example, Singh, Mamouni, and Caesar. Ultimately, though, the district judge has to look at 3553A, and here we've got victim statements, we've got relative statements, and we've got this criminal history, and we've poured a lot of deference to the district judge in sentencing, and that's why a sentence that is of the length that this one was, I guess, what, eight years, it doesn't seem, I don't know, maybe it stirs the conscience, but I'm not sure it shocks it. Well, I would say a few things in response to that, Judge Walker. First, I would say that we adduced below, and the government really hasn't meaningfully engaged with before this court, a number of overdose sentences for defendants who engaged in more aggravated criminal conduct, had far higher sentencing guideline ranges, and had worse criminal histories, in response to Judge Bianco's concern. That just shows that we give deference to district courts when they, sometimes, because of litigating circumstances, decide to give lower sentences. That's fine, but there's no case, I mean, where we have found a sentence to be shockingly high, but let's just use 10 years, that a sentence below 10 years, where someone distributes drugs and causes a death, even if unintentionally, is a shockingly high sentence. We have never said that, right? What this court has said is that when the sentence imposed is out of step with sentences imposed in comparable cases, which was the case, for example, in Caesar, and which was also discussed in Jenkins, that that can be a basis for finding substantive unreasonableness. The Hicks-Bailey case, it was a 96-month sentence, we affirmed it, where the potency of the heroin distributed by the defendant caused the death of a person, and he didn't know that. So we addressed that decision in the reply brief, Your Honor. There are multiple distinctions with that case. In particular, the district court there made a finding that the defendant had, quote, consciously disregarded a known risk by distributing an unknown controlled substance. But really, the point I want to urge the court to consider, and again, it's made at length and well in Judge Walker's opinion and Stewart, is that culpability should not turn on fortuity. Here, the result that Michael Gabriel died was fortuitous, not in the sense of fortunate, but in the sense of by chance or by happenstance. And the point that Judge Walker made in that opinion was that sentencing on the basis of individual culpability, rather than a fortuitous event that is outside the defendant's control, not only ensures an appropriate assessment of the seriousness of the offense, but also avoids unwarranted sentencing disparities. All right, thank you. Okay, we'll hear from the government. Good morning, and may it please the court. Sarah Mordozavi for the government. I also represented the government at the sentencing before Judge Kodal. The question is whether the sentence imposed was so shockingly high that it cannot fall within the range of permissible decisions, and that simply is not the case. Now, there are several points of reference that this court can look to to reach the conclusion that this sentence was appropriate. Statute, the guidelines, and other court decisions. By statute, Congress has made the determination that even where there is no intent to cause death or even harm, if death results from the distribution of controlled substances, a defendant, if appropriately charged, can be subject to a 20-year mandatory minimum sentence. Congress has also spoken through the Sentencing Commission and the guidelines. Section 5k 2.1 applies and states that it is entirely appropriate for a district court to have a substantial upward increase on the sentence above a guidelines range if death results. And critically, that policy statement by the Sentencing Commission does not turn on state of mind. One of the factors that may make it appropriate to have a substantial increase is simply whether the base offense level reflects an allowance for the risk of personal injury, which in the case of drug distribution, the base offense level is keyed off of the quantity of narcotics distributed and not the harm that is ultimately caused. But on the guidelines, if you cause death or serious injury, you can go to a level 38, right? And the base offense level on the guidelines? Only if that, if the death resulting statutory enhancement has been charged. Right. The parties agreed on that. But that supports your position too, there's no intent requirement with respect to that base offense level, right? That's correct, Your Honor. And the decisions that we have pointed to in our briefs also further support the notion that this was a substantively reasonable sentence. U.S. v. Hicks Bailey, as the court has discussed with Mr. Habib, was a 96-month sentence. And with respect to the underlying facts, they're not identical, but they're comparable. The defendant there was 21 years old. He had a criminal history of four, but none of his prior convictions were felonies. That narcotics distribution offense was his first felony offense, and none of his prior convictions were violent. One of the arguments that your adversary is making here is that this wasn't heroin. And it's commonly known that heroin is slaced with fentanyl these days. I'm sure it is in the street, which is quite different. I mean, your position is that there's a risk of it being adulterated anyway, even if it's Percocet, and that maybe here, because of the fire comments, that the defendant should have known that. Is that how you answer that question? That was the argument that we made below, Your Honor. But frankly, we don't think it makes a difference whether or not the defendant foresaw that the Percocet could have had fentanyl in it. Again, Congress has spoken in multiple ways and found that state of mind or foreseeability is not going to be determinative on whether someone should be exposed to a greater sentence when death results. That's a policy decision that Congress made, and Judge Kodal was not incorrect in giving a substantially above-guideline sentence predicated on that and other factors with respect to this particular defendant. Well, it does, it's a policy statement, and Congress has made itself clear on this, but it does fly in the face of the normal criminal law mens rea approach that we have of what was intended, and here we don't have a market distinction in terms of his mental state from just a street-level dealer of a low-risk drug. I mean, nobody here is really arguing, I guess, that he knew that this was laced with fentanyl, right? Well, the government argued below, and we continue to maintain, that he must have known that these were adulterated for the reasons that we enumerated below. But I think, Your Honor, to get at the heart of your question, there is a policy determination that Congress has already made that dealing in drugs is so pernicious that when death results, it is appropriate to have a substantial sentence for the purposes of deterrence, for the purposes of protecting the public, both of which are Section 3553A factors that Judge Kodal invoked in imposing sentence here. So when we're asking ourselves whether that sentence was shockingly high, whether it cannot be permissible, we have to take into account the fact that the defendant could have been exposed to much greater amounts of time. So if there are no further questions, Your Honor, for all those reasons, we ask that this Court affirm. All right, thank you. Mr. Habib, you have two minutes. Mr. Habib, if you could, I'm curious what your response is to that last point. If, in fact, you can get a mandatory minimum of 20 years if you distribute drugs, if it's properly charged, and the indictment and the jury finds that it caused the death without any finding with regard to mental state, someone could get a mandatory minimum of 20 years in jail, right? Yes, but that provision isn't implicated here. No, I know, but I understand that. But the question would be, if Congress has said, even if you didn't intend to kill the person with the drugs, but you did, in fact, cause the death of that person, you get a mandatory 20 years, and we're going to conclude, notwithstanding that penalty for people out there who are charged with that in the indictment, an eight-year sentence for someone who causes the death through the distribution of drugs is shockingly high compared to the 20 that's a mandatory minimum when it's properly charged. So, the mandatory... Is it pretty anomalous? No, Your Honor, for the following reason. The mandatory minimum allegation was not included in the indictment and not admitted in the guilty plea. I know, but it's a penalty out there for everybody else in terms of, like, when we say, wait, is this shockingly high, is in the range of commissionable discretion, should we consider the fact that there's a mandatory minimum out there of 20 years for this conduct? No, because in order to trigger that mandatory minimum, not only would it have had to have been charged, but Mr. Perez would have had substantial arguments that it couldn't be proved beyond a reasonable doubt to a jury on the facts of this case at trial and subject to the procedural protections that were not available to him at a sentencing proceeding, including confrontation and compulsory process. The congressional policy decision that structures the review of this appeal, as reflected in sections 3553 A3 and A4, are one, a statutory sentencing range of zero to 20 years, which the district court was required to consider under A3, a sentencing guideline range of 15 to 21 months, which the judge was required to consider under A4, and by the way, Judge Bianco, with respect to the enhanced base offense level allegation, it too requires the statutory allegation and the amended version of that guideline, in effect, as of last year, makes that explicit. So the judge was required to consider that under A4, and the policy statement at 5k2.1, which the judge was required to consider under A5. That policy statement, I must correct the government's incorrect that it is indifferent to mental state. This court held in Rivalta, a 1989 decision cited in our reply brief, that absent a finding of intent to cause death or a knowing risk of death, it would be inappropriate to upwardly depart pursuant to that policy statement, and Rivalta too was a case where the underlying offense, transportation of stolen property, did not account for risk of death and bodily harm. I would like to just make this final point, which is that there is no reason the district court offered, or that the government has offered here, why Jeremiah Perez should serve six years more than Edward Nevado, a defendant sentenced by Judge Torres, who engaged in comparable conduct. He sold heroin, not Percocet, Judge Walker, heroin laced with fentanyl that resulted in death. He had a far more substantial criminal history, and his explanation was basically the same. He sold to support his habit. He continued selling to an undercover after the fatal overdose in that case, and yet he was sentenced to two years. That's not just a function of the discretion afforded individual district judges pursuant to Booker, but it's evidence of substantive unreasonableness that this court has repeatedly invoked in finding sentences excessively high or excessively low. Thank you. Thank you. For a reserved decision, have a good day.